RECORD NO. 14-1239

In The
United States Court of Appeals
For The Fourth Circuit

CAPITAL CITY REAL ESTATE, LLC,

Plaintiff – Appellant,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,
Subscribing to Policy Number: ARTE018240,

Defendants – Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

**BRIEF OF APPELLEE**

John M. Clark, Esquire
Georgia S. Foerstner, Esquire
Clark & Fox
923 Haddonfield Road
Suite 300
Cherry Hill, NJ 08002
Phone: 856-347-4293
Fax: 856-494-1844
*Counsel for Defendants - Appellees*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1239__      Caption: __Capital City Real Estate LLC v. Certain Underwriters at Lloyd's__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Certain Underwriters at Lloyd's, London subscribing to Policy Number ARTE018240__
(name of party/amicus)

_____

who is _____appellees_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?   ☐ YES ☑ NO
   If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
   If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?      ☑YES ☐NO
    If yes, identify entity and nature of interest:

    Enstar, a publicly traded company, owns 50.1% of Shelbourne Group Limited, which in turn
    owns 100% of Shelbourne Syndicate Services Limited, the managing agency for Lloyd's
    Syndicate 2008, the lead Underwriter on the subject policy.

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                          ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: s/ Georgia S. Foerstner                    Date:        3/31/14

Counsel for: Certain Underwriters at Lloyd's et al.

## CERTIFICATE OF SERVICE
***************************

I certify that on ___March 31, 2014___ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

s/ Georgia S. Foerstner                               March 31, 2014
    (signature)                                           (date)

- 2 -

# TABLE OF CONTENTS

Table of Contents ................................................................. i

Table of Authorities................................................................. ii

Statement of the Case ............................................................. 1

Summary of Argument............................................................. 3

Argument..................................................................................... 4

    A. The District Court Correctly Held that Underwriters Do Not Owe
       Capital City A Duty To Defendant Because The Allegations Of The
       Underlying Suit Do Not Raise A Potentiality Of Coverage...................... 4

    1.   The Scope of Coverage Provided to Capital City By the
       Additional Insured Endorsement is Limited to Capital City's
       Vicarious Liability for Marquez's Acts of Omissions............................. 6

    2. Capital City's Analysis of the Scope of Coverage Afforded by the
       Additional Insured Endorsement is Flawed and Directly
       Contradicts ISO's intention to Limit Coverage Under the AIE ............. 13

    3. The Allegations in the Underlying Complaint Do Not Create  A
       Potentiality of Coverage ........................................................ 21

    4. The Extrinsic Evidence Upon Which Capital City Relies is
       Irrelevant and Does Not Create a Potentiality of Coverage ................... 22

Conclusion........................................................................ 32

Oral Argument Request......................................................... 34

Certificate of Compliance

Certificate of Filing and Service

# TABLE OF AUTHORITIES

*Aetna Cas. Sur. Co. v. Cochran,*
337 Md. 98 (1995).................................................................. 5, 23

*American Empire Surplus Lines Ins. Co. v. Crum & Forster Specialty Ins. Co.,*
2006 WL 1441854 (S.D. Tex. 2006)...................................... 17

*Assicurazioni Generali, S.p.A. v. Neil,*
160 F.3d 997 (4th Cir. 1998)...................................... 18, 19, 20

*Baltimore Gas & Electric Co. v. Commercial Union Ins. Co.,*
113 Md. App. 540, 688 A.2d 496 (1997)............5, 8, 9, 10, 18, 30, 31, 32

*Brohawn v. Transamerica Ins. Co.,*
276 Md. 396, 347 A.2d 842 (1975)........................................ 21

*DelSanto v. Hyundai Motor Fin. Co.,*
882 A.2d 561 (R.I. 2005) ...................................................... 20

*Engineering & Const. Innovations, Inc. v. L.H. Bolduc Co., Inc.*
825 N.W.2d 695 (2013)..........................................14, 15, 16, 26

*G.E. Tignall & Co., Inc. v. Reliance Nat'l. Ins. Co.,*
102 F. Supp. 2d 300 (D. Md. 2000) ......................... 10, 11, 12, 13

*Garcia v. Fed. Ins. Co.,*
969 So.2d 288 (Fla. 2007) .................................................... 17

*Gilbane Bldg. Co. v. Admiral Ins. Co.,*
664 F.3d 589 (5th Cir. 2011) ...................................26, 27, 28, 29

*MacArthur v. O'Connor Corp.,*
635 F.Supp.2d 112 (D. R.I. 2009)...................................... 14, 17

*National Union Fire Ins. Co. of Pittsburgh, PA v. NGM Ins. Co.,*
2011 WL 6415484 (D. N.H. 2011) ...................................... 17

*Pro Con, Inc. v. Interstate Fire & Casualty. Co.,*
794 F. Supp.2d 242 (D. Me. 2011)........................................ 17

*Reames v. State Farm Fire & Casualty Insurance,*
111 Md. App. 546, 683 A.2d 179 (Md. Ct. Spec. App. 1996).............. 23, 24, 25, 29

*Red Roof Inns, Inc. v. Scottsdale Ins. Co,*
419 Fed. Appx. 325 (4th Cir. 2011).................................................. 12, 13

*Southern Md. Agric. Assoc., Inc. v. Bituminous Cas. Corp.,*
539 F. Supp. 1295 (D. Md. 1982) ...................................................... 5

*St. Paul Fire &Marine Ins. Co. v. Pryseski,*
292 Md. 187 (1981).......................................................................... 5

*Sullins v. Allstate Ins. Co.,*
340 Md. 503, 667 A.2d 617 (1995).................................................. 23

*Thunder Basin Coal Co., LLC v. Zurich American Ins. Co.,*
943 F. Supp. 2d 1010 (E.D. Mo. 2013)............................................ 18

*Utica Insurance Co. v. Miller,*
130 Md. App. 373, *cert. den.,* 359 Md. 31 (2000) ......................... 5

*Vulcan Materials Co. v. Cas. Ins. Co.,*
723 F.Supp. 1263 (N.D.Ill. 1989)................................................. 5, 17

*Walk v. Hartford Cas. Ins. Co.,*
382 Md. 1, 852 A.2d 98 (2004)...................................................... 25

## OTHER AUTHORITIES

Donald S. Malecki, Pete Ligeros  & Jack P. Gibson, *The Additional Insured Book*
(5th Ed. 2004) .................................................................................. 7, 8

*The American Heritage Dictionary*, Third Edition (1994) ..................... 13

## STATEMENT OF THE CASE

Appellant, Capital City Real Estate, LLC, ("Capital City") filed the instant action seeking a declaratory judgment that Underwriters are obligated to provide it a defense and indemnification in the underlying action *The Standard Fire Ins. Co. v. Capital City Real Estate, LLC*, Case No. 0004875-12, venued in the Superior Court for the District of Columbia ("Underlying Suit") (JA, pp. 6-17.)  The claim in the Underlying Suit is for Capital City's alleged negligence that caused property damage to a home located at 55 Bryant Street, NW, in Washington, D.C. (JA, pp. 79-82.)  The Complaint alleges, in pertinent part, as follows:

1. Bryant Street, LLC, Capital City Real Estate LLC and 57 Bryant Street, Northwest Limited Partnership are owners and/or developers of a row house located at 55 Bryant Street, NW, Washington, DC.

2. The Defendants applied for and were issued a building permit, dated March 20, 2009, to perform renovations at 55 [should read "57"] Bryant St., NW, Washington, DC.  Sometime after the issuance of said permit, defendants began performing construction work at the premises, including excavating the lowest level of the row house in order to construct an apartment with a separate entry.

3. The plans submitted to the District of Columbia did not detail the excavation details or any plans for providing any underpinning support or other support to the common walls and other structures of the premises.

4. On June 9, 2009, while the Defendants were performing the excavation of the basement apartment, the common wall between 55 Bryant Street, NW, Washington DC and 57 Bryant Street NW, Washington DC, shifted and caused significant

1

> property damage to the row house located at [55] Bryant Street, NW, Washington, DC.
>
> * * *
>
> 7.   The failure of the Defendants to properly excavate and support the structure located at 57 Bryant Street, NW, Washington, DC constitutes negligence in that they failed to comply with the applicable standard of care while performing said renovations.
>
> 8.   As a direct and proximate result of the negligence of the Defendants, the Plaintiff's insured premises sustained extensive property damage, causing significant repairs to be made.

(JA, pp. 80-81.)

Marquez Brick Work, Inc. ("Marquez") was retained as a subcontractor by Capital City to perform excavation and underpinning work at 57 Bryant Street. Underwriters issued to Marquez commercial general liability policy number ARTE018240 (the "Policy"). (JA, pp. 107-153.) The Policy contains an Additional Insured Endorsement (hereinafter "AIE") naming Capital City as an additional insured "but only with respect to liability for . . . 'property damage' . . . caused in whole or in part, by: [Marquez's] acts or omissions . . . in the performance of [Marquez's] ongoing operations for the additional insured . . . ." (JA, p. 156.)

Capital City alleges that it is owed both a defense and indemnification for the negligence claim asserted against it in the Underlying Suit. Capital City moved for summary judgment on the ground that extrinsic evidence creates a potentiality of coverage under the Policy and therefore, Underwriters must defend and indemnify Capital City for any damages it becomes legally obligated to pay.

(JA, pp. 13-190.)  Underwriters opposed the motion and cross-moved for summary judgment on the grounds that the claim asserted in the Underlying Suit, *i.e.*, negligence against Capital City, does not raise a potentiality of coverage because, per the Additional Insured Endorsement, coverage is limited to Capital City's vicarious liability for property damage caused in whole or in part by Marquez's acts or omissions.  (JA, pp. 191-208.)  Because the Complaint does not seek to hold Capital City vicarious liable for property damage caused by Marquez, Underwriters do not owe Capital City a duty to defend.  Rather, the liability inducing conduct of which Standard Fire complains and seeks to hold Capital City liable for is Capital City's own negligence that allegedly caused the subject property damage.  (JA, p. 80, ¶ 3.)

The District Court denied Capital City's motion and granted Underwriters' cross-motion.  (JA, p. 282.)  Capital City appealed.  (JA, p. 283.)

## **SUMMARY OF ARGUMENT**

The District Court correctly granted summary judgment in favor of Underwriters because the Complaint in the Underlying Suit does not state a claim that potentially falls within coverage.  Even if this Court considers the extrinsic evidence presented by Capital City, such evidence does not give rise to coverage. The only "fact" that the extrinsic evidence establishes is that Marquez performed excavation and underpinning work at 57 Bryant Street.  The evidence does not

3

establish that The Standard Fire Insurance Company (hereinafter "Standard Fire") seeks to hold Capital City liable for any acts or omissions of Marquez that caused, in whole or in part, any property damage. Rather, the liability inducing conduct of which Standard Fire complains and for which it seeks to hold Capital City liable is Capital City's own negligence that allegedly caused the subject property damage.

The District Court correctly interpreted the Complaint and found that "proof of negligence on the part of Marquez Brick would not provide a defense for Capital City against the claim presented in the Underlying Lawsuit" and that "resolution of the claim presented in the Underlying Lawsuit against Capital City would not require a determination of whether Marquez Brick was, or was not, negligent." (JA, p. 274.) As the claim of negligence asserted against Capital City in the Underlying Suit does not raise a potentiality of coverage under the AIE, the District Court correctly held that Underwriters do not owe Capital City a duty to defend or indemnify.

## ARGUMENT

### A. THE DISTRICT COURT CORRECTLY HELD THAT UNDERWRITERS DO NOT OWE CAPITAL CITY A DUTY TO DEFEND BECAUSE THE ALLEGATIONS OF THE UNDERLYING SUIT DO NOT RAISE A POTENTIALITY OF COVERAGE

When dealing with disputes over insurance coverage, Maryland law holds that summary judgment is "warranted where there is no dispute over the terms of

an insurance contract but only as to their meaning." *Utica Insurance Co. v. Miller,* 130 Md. App. 373, 380, *cert. den.,* 359 Md. 31 (2000).  This is so because "'[c]onstruction of a contract is, in the first instance, a question of law for the court to resolve.'" *Baltimore Gas & Electric Co. v. Commercial Union Ins. Co.,* 113 Md. App. 540, 554, 688 A.2d 496 (1997).  In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, Maryland courts apply the following two-part test:

> (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? [and] (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit.

*St. Paul Fire & Marine Ins. Co. v. Pryseski,* 292 Md. 187, 193 (1981).  To answer these questions, a court "must ascertain the scope and limitations of coverage under the insurance policies and then determine whether the allegations in the [underlying] action would potentially be covered under those policies." *Aetna Cas. Sur. Co. v. Cochran,* 337 Md. 98, 104 (1995).  Only if any of the claims potentially come within the policy coverage, is the insurer obligated to defend all claims.  *See Utica Mut. Ins. Co.,* 130 Md. App. at 383 (2000); *Southern Md. Agric. Assoc., Inc. v. Bituminous Cas. Corp.,* 539 F. Supp. 1295, 1299 (D. Md. 1982) (citation omitted).

**1. The Scope of Coverage Provided to Capital City
By the Additional Insured Endorsement is Limited
to Capital City's Vicarious Liability for Marquez's
Acts or Omissions**

The Policy's Additional Insured Endorsement, Form CG 20 10 07 04,
(hereinafter sometimes referred to "AIE") provides coverage for Capital City "but
only with respect to liability for . . . 'property damage' caused in whole or in part,
by: [Marquez's] acts or omissions; or 'the acts or omissions of those acting on
[Marquez's] behalf in the performance of [Marquez's] ongoing operations for
[Capital City]' . . . ." In 2004, Form CG20 10 Endorsement was revised to limit
the scope of coverage afforded to additional insureds because ISO drafters believed
that the courts interpreting the previous version of the Endorsement imposed no
requirements as to the cause of covered injury or damage.    As explained in The
Additional Insured Book:

> Versions of endorsement CG 20 10 that preceded the
> 2004 revision imposed no requirements as to the cause of
> covered injury or damage.  The only requirement of these
> older endorsements was that the additional insured's
> liability had to 'arise out of' the named insured's work or
> operations.    Courts repeatedly interpreted the phrase
> 'arising out of' to require only an indirect causal
> connection between the named insured's operations and
> the injury or damage.  (In cases involving the injured
> employee of a named insured contractor, for example,
> who brings a claim against the additional insured project
> owner, <u>courts often viewed the mere presence of the
> named insured's employees on the additional insured's
> premises performing their work as a sufficient connection
> to prove that the injury 'arose out of' the named insured's</u>

6

work or operations.   Under such a reading of the
endorsement, the additional insured would have coverage
even when its own negligence was determined to be the
sole cause of the injury.) . . .

ISO eventually stated that this broad interpretation of
'arising out of' contradicted its own understanding of the
intended scope of additional insured coverage and
prompted the revision of endorsement CG 20 10 in 2004.
The phrase 'arising out of' was removed, to be replaced
by 'caused, in whole or in part, by,' which the ISO
drafters believe expresses a stronger causal relationship.
And instead of the open-ended phrase 'your ongoing
operations,' the 2004 edition ties the claim to 'your acts
or omissions.'   Under this new language, it will not be
sufficient for the additional insured to show that injury or
damage would not have occurred *but for the fact that the
named insured was performing operations.*   It will be
necessary to show that some act or omission of the
named insured *actually caused the injury or damage.*

\*\*\*

The practical result of these changes in wording is the
elimination of coverage for liability attributable to the
additional insured's sole negligence.   A preliminary
filing of the 2004 revision actually contained an
exclusion of injury or damage arising out of the sole
negligence of the additional insured, but that provision
was dropped in the final revision.   Having already
specified in the endorsement's insuring agreement that
injury or damage must be caused at least partly by the
named insured, an exclusion of sole negligence on the
part of the additional insured was considered superfluous
by ISO....   ISO wanted the key to coverage for an
additional insured to be not just the partial or sole
negligence of *someone else* besides the additional
insured, but rather the partial or sole negligence of *the
named insured.*

Donald S. Malecki, Pete Ligeros  & Jack P. Gibson, *The Additional Insured Book*

(5th Ed. 2004), p. 179.

Even before 2004, however, the Maryland courts recognized that the coverage afforded to additional insureds did not extend to damage allegedly caused solely by their own negligence. Thus, the broad interpretation of coverage being urged upon this Court by Capital City has never been the law in Maryland. Consistent with the intent of Form CG 20 10, as explained in the Additional Insured Book above, Maryland law recognizes that a subcontractor's commercial general liability insurer has a duty to defend an additional insured from tort claims grounded on its derivative liability for acts of the subcontractor, but not for claims alleging the sole negligence of the additional insured. *See, Baltimore Gas and Elec. Co., v. Commercial Union Ins. Co.*, 113 Md. App. 540, 688 A.2d 496 (1997).

In *Baltimore Gas and Electric Co.* BGE hired Ferguson as a subcontractor to perform certain excavation and subsurface work in connection with BGE's installation of underground utilities in Anne Arundel County. 113 Md. App. at 547, 688 A.2d at 500. Ferguson excavated a large utility pit into which a car fell injuring the driver. *Id.* at 546, 688 A.2d at 499. Initially, plaintiffs, the Corradettis, sued BGE, Ferguson and others in negligence for their injuries. However, during the course of discovery, plaintiffs determined that BGE alone was responsible for filling in the utility pit and, therefore, they dismissed their claims against Ferguson and the other defendants and proceeded against BGE only. *Id.* at

8

549, 688 A.2d at 500.

Ferguson's contract with BGE required Ferguson to obtain commercial general liability insurance and provide BGE with coverage for potential claims by third parties that were based on Ferguson's work for BGE. Ferguson obtained a general liability policy with Commercial Union that contained an additional insured endorsement. *Id.* at 548, 688 A.2d at 500. The policy specified that, as an additional insured, BGE was protected only with respect to liability arising out of:

> A. 'Your work' [Ferguson's] for the additional insured(s) at the location designated above, or
>
> B. Acts or omissions of the additional insured(s) in connection with their general supervision of 'your work' at the location show in the Schedule.

The policy defined 'Your work' as:

> a. Work or operations performed by you or on your behalf; and
>
> b. Materials, parts or equipment furnished in connection with such work or operations. . . .

113 Md.App. at 555, 688 A.2d at 504.

BGE sought to be defended and indemnified by Commercial Union for the Corradetti action. Commercial Union refused to defend BGE and BGE filed a declaratory judgment action. The court found that the policy did not cover BGE for claims based on BGE's actions, except for those claims grounded on its derivative liability for acts of Ferguson and its supervision of Ferguson's work. *Id.*

9

at 558, 688 A.2d at 505.  Thus, the court held that, initially, Commercial Union had a duty to defend BGE because the allegations in the underlying suit sought to hold BGE derivatively liable for work done by Ferguson, but once the Corradettis dismissed their claims against all parties except for BGE and proceeded against BGE based only upon BGE's sole negligence, Commercial Union's duty to defend ceased.  *Id.* at 576, 688 A.2d at 514.

Similarly, in *G.E. Tignall & Co., Inc. v. Reliance Nat'l. Ins. Co.,* 102 F. Supp. 2d 300 (D. Md. 2000), the district court was faced with an almost identical factual situation present here except that the endorsement at issue pre-dated ISO's 2004 revisions and employed the broader "arising out of" language.  Relying on and following the reasoning of *Baltimore Gas & Electric Co.*, the district court held that because the plaintiff in the underlying tort suit did not allege nor plead a theory of vicarious liability, *i.e.*, derivative liability, no potential for liability existed and the additional insured endorsement did not provide coverage.  *Id.* at 307.

In *Tignall*, an additional insured general contractor filed suit against the insurer of a subcontractor when the insurer denied its tender of defense for a personal injury action.  The general contractor, G.E. Tignall & Company, Inc. ("Tignall"), subcontracted with Hudak Asbestos Removal, Inc. ("Hudak") to perform lead abatement at a property that was being renovated.  Hudak's contract

10

with Tignall required him to name Tignall as an additional insured under Hudak's liability policy. Suit was later filed against Tignall and other parties for alleged lead poisoning at the property where Tignall and Hudak performed renovations. Hudak was not named as a party in the suit. Tignall tendered the defense of the suit to Hudak's carrier, Reliance. Reliance denied coverage on the basis that Tignall, as an additional insured, was only covered for vicarious liability when Hudak's own operations were alleged as the basis of liability. *G.E. Tignall & Co., Inc.,* 102 F. Supp. 2d at 305.

As required under Maryland law, the court first examined the scope of coverage afforded Tignall by the additional insured endorsement of the policy. The endorsement stated that Tignall was an additional insured "only with respect to liability arising out of [Hudak's] ongoing operations performed for [Tignall]." *Id.* Reliance argued that coverage was limited to 'those instances where the additional insured is held vicariously liable for the named insured's actions.' " *Id.* at 306. The court agreed and held that "Hudak's policy limiting additional insured coverage to liability arising out of the named insured's own work does not cover Tignall for its own negligent acts." *Id.* The court found that Reliance did not have a duty to defend or indemnify Tignall for its own negligence. *Id.*

The court then addressed the second step in the duty to defend analysis and examined whether the allegations against Tignall gave rise to a potentially covered

11

claim. *Id.* at 307. Tignall produced extrinsic evidence demonstrating that Hudak performed the lead paint removal. Based on this evidence, Tignall argued that a potentiality for coverage existed because "the complaint alleges that the plaintiff's injuries were caused by renovations including 'lead paint removal....'" *Id.* As Hudak performed the lead abatement, Tignall took the position that the potential existed that its liability would arise from Hudak's work.

The court examined the complaint in the underlying action and determined that no potentiality for coverage existed because the "underlying lawsuit neither mentions Hudak nor affirmatively pleads a case of vicarious liability." *Id.* at 307. Thus, the fact that Hudak performed lead abatement work, in and of itself, was insufficient to give rise to a potentiality of coverage. Rather, the court held that as "[t]he plaintiff in the underlying tort suit did not allege nor plead a theory of vicarious liability," "no potential for liability exists" and "Reliance does not owe Tignall a defense." *Id.*

Contrary to Capital City's assertions, the district court in this case did not err in relying on *Tignall* when reaching its decision. The facts and law discussed in *Tignall* are on point with this case and it was wholly proper for the district court to rely on and follow its holding. Moreover, *Tignall* followed the Court of Special Appeals' holding in *Baltimore Gas and Electric Co.* and, therefore, Tignall is grounded in Maryland state law. The fact that this Court in *Red Roof Inns v.*

*Scottsdale Ins. Co.*, 419 Fed. Appx. 325 (2011), did not find *Tignall* persuasive within the context of that case does not call its holding into doubt or render it unpersuasive here. The facts and legal issues addressed in *Red Roof Inns* are completely different from those here. Moreover, in *Red Roof Inns*, *Tignall* is mentioned only in a footnote. In that footnote, the Court states "Scottsdale also urges us to follow *G.E. Tignall & Co. v. Reliance National Insurance Co.*" However, a review of Scottsdale's appellate brief (at 2009 WL 3125520) shows that *Tignall* is not even cited or discussed within the brief. Therefore, it is unknown for what legal principle Scottsdale was urging the court to follow *Tignall* or why the court did not find it persuasive within the context of that case.

2.   **Capital City's Analysis of the Scope Coverage Afforded by the Additional Insured Endorsement is Flawed And Directly Contradicts ISO's intention to Limit Coverage Under the AIE**

Capital City's analysis as to the scope of coverage afforded by the AIE is flawed because it divorces "act or omission" from the concept of fault. The Endorsement expressly states that coverage is afforded to Capital City "but only with respect to **liability** for 'property damage' caused by acts or omissions of the named insured." (emphasis added) "Liability" means "something for which one is legally obligated." *The American Heritage Dictionary*, Third Edition (1994). Thus, as in *Tignall* in order to establish coverage, it is not enough for Capital City

13

to simply show that the underlying suit involves work performed by the named insured. Rather, Capital City must establish that the Underlying Suit seeks to hold Capital City legally obligated for some act or omission of Marquez. Capital City's interpretation of the AIE violates the fundamental tenant that all words of an insurance contract must be given effect. *See MacArthur v. O'Connor Corp.*, 635 F.Supp.2d 112 (D. R.I. 2009). Under the AIE, Capital City has coverage applying merely by a showing that Marquez performed the work that is the subject of the Underlying Suit. This interpretation fails to give full meaning to the phrase "liability for . . . [Marquez's] . . . acts or omissions." In order to hold Capital City legally obligated for the acts or omissions of Marquez, Standard Fire would have to allege a claim of vicarious liability against Capital City, which it did not. This flaw in Capital City's coverage analysis was addressed by the Supreme Court of Minnesota in *Engineering & Const. Innovations, Inc. v. L.H. Bolduc Co., Inc.*, 825 N.W.2d 695 (2013), wherein the Supreme Court of Minnesota analyzed and rejected the same argument advanced by Capital City here.

In that case, Engineering & Construction Innovations, Inc. (ECI), acting as the general contractor for Metropolitan Council Environmental Services (Met Con), was required to pay $235,000 for property damage that ECIs subcontractor, Bolduc, caused to an underground pipe. *Id.* at 698. Bolduc was hired to construct underground cofferdams (rectangular sheet metal walls) around existing pipeline.

14

Bolduc was required to drive the sheets "per ECI location." *Id.* at 698-699. At one of the cofferdam locations, one of Bolduc's sheets caused damage because it was driven through the edge of a pipe. *Id.* at 700. All parties involved agreed that Bolduc drove a sheet into the pipe and that contact between the sheet and the pipe caused the resulting damage. However, at the site of the damage, ECI had provided the template and markings designating where Bolduc was to drive the sheeting cofferdams as required by the subcontract. *Id.* Thus, like in this case where Marquez was required to perform its excavation and underpinning work in accordance with plans and blueprints provided by Capital City, Bolduc was required to install cofferdams according to specifications provided by ECI.

After paying for the damaged pipe, ECI submitted a claim to Bolduc's insurer, Travelers, seeking reimbursement of the expenses per an additional insured endorsement to Bolduc's commercial general liability policy. The policy named ECI as an additional insured for "liability caused by acts or omissions" of Bolduc. 825 N.W.2d at 699. Travelers refused to reimburse ECI claiming that ECI's acts or omissions were the cause of the damage, not Bolduc's and, therefore, ECI's claim did not fall within the coverage provided by the additional insured endorsement. *Id.* at 700. ECI filed a lawsuit against Bolduc in negligence and Travelers for declaratory judgment, respectively. *Id.* With respect to the negligence claim, a jury found that Bolduc was not negligent and awarded ECI no

15

damages. *Id.* at 701.

With respect to the declaratory judgment action, ECI and Travelers filed cross-motions for summary judgment. Travelers argued that ECI was only entitled to coverage as an additional insured to the extent damage was "caused by an act or omission" of Bolduc and because a jury determined Bolduc was not negligent, the damage to the pipe that ECI sought to recover was not caused by Bolduc and, therefore, not entitled to coverage. 825 N.W.2d at 702. ECI, applying the same analysis invoked by Capital City here, argued that because it was undisputed that Bolduc did, in fact, hit the pipe, the damage was, therefore, by definition, caused by Bolduc's acts or omission. *Id.*

On appeal to the Minnesota Supreme Court, the Court explained why ECI's interpretation of the policy was flawed and why the phrase "acts or omissions" cannot be divorced from the concept of fault. In rejecting ECI's interpretation of coverage, the court explained:

> Liability can . . . only be imposed upon ECI for the acts or omissions of Bolduc if Bolduc itself could be liable for those acts or omissions. In other words, if Bolduc could not be liable in the first instance, ECI can have no vicarious liability, and no liability of any kind has been 'caused.' *See American Heritage Dictionary of the English Language* 295 (5[th] ed. 2011) (defining caused as '[t]o be the cause of or reason for; result in"); *Webster's Third New International Dictionary* 356 (3d ed. 1961)(defining cause as 'to serve as cause or occasion of: bring into existence."). Therefore, it would be unreasonable to interpret 'acts or omissions,' as ECI

16

> suggests, without regard to fault, because if Bolduc has
> no liability for its own conduct, such conduct cannot be
> the cause of ECI's vicarious liability.

*Id*. at 708.

A review of the case law throughout the United States that analyzes the scope of coverage afforded by additional insured endorsements demonstrates that the courts fall generally into two camps – those that limit coverage to additional insureds only for derivative or vicarious liability for the acts or omissions of the named insured -- *(MacArthur v O'Connor Corp.*, 635 F.Supp.2d 112, 116-117 (D.R.I. 2009)(concluding that an additional insured provision only provided coverage for the 'acts and omissions' of the named insured to the extent that the additional insured was vicariously liable for the acts and omissions of the named insured); *Vulcan Materials Co. v. Cas. Ins. Co.*, 723 F.Supp. 1263, 1265 (N.D.Ill. 1989)(concluding that additional insured coverage for liabilities 'because of acts or omissions of an insured' was 'plainly a vicarious liability provision and nothing more.'); *Garcia v. Fed. Ins. Co.*, 969 So.2d 288, 294 (Fla. 2007)(concluding that 'the phrase "any other person with respect to liability because of acts or omissions" of the named insured covers only an additional insured's vicarious liability for the negligent acts or omissions of the named insured")) -- and those that do not. *See*, *American Empire Surplus Lines Ins. Co. v. Crum & Forster Specialty Ins. Co.*, unreported, 2006 WL 1441854 (S.D. Texas 2006); *Pro Con v. Interstate Fire & Casualty Co.*, 794 F.Supp.2d 242 (D. Maine 2011); *National Union Fire Ins. Co.*

17

*of Pittsburgh, PA v. NGM Ins. Co.*, unreported, 2011 WL 6415484 (D. N.H. 2011);

*Thunder Basin Coal Col., LLC v. Zurich American Ins. Co.*, 943 F.Supp2d 1010

(E.D. Mo. 2013).

Not surprisingly, Capital City relies upon the decisions in the second camp

to support its claim for coverage. However, the Court of Special Appeals' decision

in *Baltimore Gas and Elec. Co. v. Commercial Union Ins. Co.* places Maryland

law squarely within the first camp. An analysis of the case law within the first

camp show that they are the better reasoned opinions. Their holdings give effect to

all language in the AIE and are consistent with general principles of law governing

liability. The fact that other jurisdictions interpret additional insured coverage

differently is not, in and of itself, a basis for departing from established Maryland

law. To the contrary, unless this Court can present persuasive data for disregarding

an intermediate appellate state court ruling, it is constrained from doing so.

As explained by this Court in *Assicurazioni Generali, S.P.A. v. Neil, 160

F.3d 997 (*4th Cir 1998):

> It is axiomatic that in determining state law a federal
> court must look first and foremost to the law of the
> state's highest court, giving appropriate effect to all its
> implications. A state's highest court need not have
> previously decided a case with identical facts for state
> law to be clear. It is enough that a fair reading of a
> decision by a state's highest court directs one to a
> particular conclusion. Only when this inquiry proves
> unenlightening, as we find it does in this case, should a
> federal court seek guidance from an intermediate state

court.

When seeking such guidance we defer to a decision of the state's intermediate appellate court to a lesser degree than we do to a decision of the state's highest court. Nevertheless, we do defer. Indeed, the Supreme Court has specifically directed:

> [w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*West v. A T & T*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940); accord, *Hicks v. Feiock*, 485 U.S. 624, 630 n. 3, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); *see also Stoner v. New York Life Ins. Co.*, 311 U.S. 464, 467, 61 S.Ct. 336, 85 L.Ed. 284 (1940) ('[F]ederal courts, under the doctrine of *Erie* ... must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently.').

Thus, a federal court must "present" persuasive data when it chooses to ignore a decision of a state intermediate appellate court that is directly on point. *United States v. Little*, 52 F.3d 495, 498 (4th Cir.1995). What a federal court, sitting in diversity, cannot do is simply substitute its judgment for that of the state court. *Id.*

160 F.3d at 1002.

    "Generally, only if the decision of a state's intermediate court cannot be reconciled with state statutes, or decisions of the state's highest court, or both, may

a federal court sitting in diversity refuse to follow it." *Id.* at 1003. "A federal court can depart from an intermediate court's fully reasoned holding as to state law only if convinced that the state's highest court would not follow that holding." *Id.* (citation omitted). "[A] federal court cannot refuse to follow an intermediate appellate court's decision simply because it believes the intermediate court's decision was wrong, bad policy or contrary to majority rule in other jurisdictions." *Id.* "Common sense" or "what ought to be the law" do not constitute persuasive data permitting a federal court to ignore the holding of an intermediate state court. *Id.* at 1004. A federal court, sitting in diversity, cannot do is simply substitute its judgment for that of the state court. *Id.*

Maryland law holds that an additional insured is afforded coverage but only for its derivative liability for the named insured's acts or omissions. "Vicarious liability arises simply by the operation of law and is derivative of the wrongful act of the agent." *DelSanto v. Hyundai Motor Fin. Co.*, 882 A.2d 561, 566 (R.I. 2005). In this case, the district court correctly applied the law of Maryland and found that "[t]he Complaint in the Underlying Lawsuit does not state a claim for property damage cause either in whole or in part by Marquez Brick's acts or omission. The Complaint neither mentions Marquez Brick nor alleges that Capital City would be liable for anyone's negligence other than its own." (JA, p. 272.) As the case law relied upon by Capital City does not reflect the law of Maryland and

20

Capital City has not provided any persuasive data that shows the Maryland Supreme Court would decide differently, this Court should reject Capital City's urging to follow it.

### 3. The Allegations in the Underlying Complaint Do Not Create A Potentiality of Coverage

Once the scope of coverage is determined, the next step employed by the Maryland courts is to determine if there is a potential the insured will be found liable for damages that fall within that scope of coverage. *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975). Throughout this matter, Capital City has maintained that in the Underlying Suit it is being held liable for property damage caused in whole or in part by Marquez acts or omissions. A proper analysis of the Complaint, however, shows that this is not true. The Complaint in the Underlying Suit is simple and straightforward. It names only three defendants—57 Bryant Street, NW Limited Partnership, Bryant St., LLC and Capital City. The Complaint alleges that the defendants obtained a permit and began performing construction work at the premises adjacent to plaintiff's property, including excavating the lowest level of the row home. (JA, p. 80 at Paragraph 2.) The Complaint further alleges that Capital City's construction plans did not detail the excavation details or any plans for providing any underpinning support to the common walls and other structure of the premises.

21

(JA, p. 80 at Paragraph 3.)  Standard Fire alleges that Capital City was negligent and that its negligence proximately caused its damages. (JA, p. 81)

The Complaint is devoid of any mention or reference to Marquez.  There are no allegations that Capital City's employees, agents, or servants were negligent or otherwise liable for the property damage.  There are no allegations that Capital City is vicariously liable for the actions of any subcontractor, including Marquez. All allegations are directed solely against Capital City and its co-defendants and allege that their negligence proximately caused Standard Fire's damages.  Given these allegations, the district court determined correctly that "the Complaint in the Underlying Lawsuit does not state a claim for property damage caused either in whole or in part by Marquez Brick's acts or omissions" and, therefore, Underwriters did not owe Capital City a duty to defend.

### 4. The Extrinsic Evidence Upon Which Capital City Relies Is Irrelevant and Does Not Create A Potentiality of Coverage

The district court also determined correctly that the extrinsic evidence upon which Capital City relies is irrelevant and does not create a potentiality of coverage.  Where there is a question if the allegations of a specific underlying complaint state a cause of action within the coverage of the insurance policy at issue sufficient to trigger the insurer's duty to defend, then "an insured may establish a potentiality of coverage under the insurance policy through the use of

22

extrinsic evidence." *Aetna Cas. Sur. Co. v. Cochran,* 337 Md. 98, 111-12 (1995); *see also Sullins v. Allstate Ins. Co.,* 340 Md. 503, 667 A.2d 617 (1995) (internal citations omitted).  However, the court in *Cochran* cautioned that evidence to support an insured's assertion may only be used to establish a potentiality of coverage under the insurance policy "if [the] insured demonstrates that there is a reasonable potential that the issue triggering coverage will be generated at trial." 337 Md. at 112.  Maryland law is clear that extrinsic evidence cannot be used to create a new, unasserted cause of action that would create a duty to defend. *Reames v. State Farm Fire & Casualty Insurance,* 111 Md. App. 546, 560-61, 683 A.2d 179, 186 (Md. Ct. Spec. App. 1996).  The extrinsic evidence must concern an issue that is reasonably likely to be generated at trial in order to be considered.

The Maryland Court of Special Appeals utilized this analytical framework in *Reames v. State Farm Fire & Casualty Insurance,* 111 Md. App. 546, 683 A.2d 179 (Md. Ct. Spec. App. 1996), where it analyzed if the underlying tort complaint stated a potentiality of coverage and triggered the insurer's duty to defend.  In *Reames,* the insured sought defense and indemnity under her parents' homeowners' policy for a suit brought against her for malicious prosecution and abuse of process.  These causes of action were related to an underlying criminal action involving an assault and battery. 111 Md. App. at 549, 683 A.2d at 180. The homeowners' policy did not provide coverage for malicious prosecution or

abuse of process. While malicious prosecution and abuse of process were the only causes of action brought against the insured, the factual allegations of the complaint included facts regarding the alleged assault and battery. 111 Md. App. at 550, n.4, 683 A.2d at 181, n.4. The insured relied on these facts and extrinsic evidence from the criminal action to show that she had "sustained some physical injury which is a covered claim" and that there was a sufficient potentiality of coverage to trigger the insurer's obligation to provide a defense. 111 Md. App. at 552, 683 A.2d at 182.

To determine the scope of the potentiality test, the *Reames* court analyzed the holdings in *Cochran* and *Sullins*. The court gleaned the following regarding the potentiality test:

> From these cases, we glean that the analysis concerning an insurer's duty to defend a lawsuit filed against its insured on the ground that the allegations in the tort action potentially bring the tort claim within policy coverage is governed *solely by evaluating the causes of action actually alleged by the plaintiff in the lawsuit,* along with the relevant extrinsic evidence. This extrinsic evidence must, however, be related in some manner to a cause of action actually alleged in the complaint and cannot be used by the insured to create a new unasserted claim that would create a duty to defend. Unasserted causes of action that could potentially have been supported by the factual allegations or the extrinsic evidence cannot form the basis of a duty to defend because they do not demonstrate 'a reasonable potential that the issue triggering coverage will be generated at trial.'

24

*Reames,* 111 Md. App. at 560-61, 683 A.2d at 186 (emphasis added) (quoting *Cochran,* 337 Md. at 112, 651 A.2d at 866). Using this analysis, the *Reames* court held that the insured could not use extrinsic evidence concerning the underlying plaintiff's physical injuries in order to create an unasserted cause of action for assault and battery, which would provide a basis for the insurer's duty to defend. *Reames v. State Farm Fire & Casualty Insurance,* 111 Md. App. 560-61, 683 A.2d 179 (Md. Ct. Spec. App. 1996). Assault and battery was simply not asserted against the plaintiff and she could not create a claim solely for purposes of coverage.

Therefore, Capital City can only rely an extrinsic evidence to establish coverage if there is a reasonable potential that the "issue triggering coverage will be generated at trial," and "where the underlying complaint neither conclusively establishes nor negates a potentiality of coverage." *Walk v. Hartford Cas. Ins. Co.,* 382 Md. 1, 852 A.2d at 106 (internal quotation marks and citation omitted). In this case, the AIE provides coverage to Capital City only for liability for property damage caused in whole or in part by Marquez's acts or omissions. The Endorsement limits coverage to vicarious liability with no coverage for Capital City's own negligence. The only cause of action in the Underlying Suit against Capital City is negligence. There are no allegations in the Underlying Suit regarding Capital City's vicarious liability for the actions of Marquez. Rather, the

25

liability inducing conduct of which Standard Fire complains and seeks to hold Capital City liable for is not that Marquez performed excavation and underpinning work, but that Capital City was negligent in that its plans did not did not detail the excavation details or any plans for providing any underpinning support to the common walls and other structure of the premises. (JA, p. 80, ¶ 3.)

Because the extrinsic evidence introduced by Capital City does not relate in some manner to a cause of action actually alleged in the Underlying Suit, Capital City cannot introduce extrinsic evidence to create a duty to defend. Therefore, the extrinsic evidence submitted by Capital City should not even be considered. However, even if considered, the evidence does not create a duty to defend because it merely shows that Marquez performed certain excavation and underpinning work; the evidence does not establish that Standard Fire seeks to hold Capital City vicariously liable for Marquez's acts or omissions.

As explained by the court in *Engineering & Const. Innovations, Inc. v. L.H. Bolduc, Inc.*, 825 N.W.2d 695 (2013), a mere showing that the named insured performed work that resulted in damage is not, in and of itself, sufficient to create coverage for an additional insured. Rather, the critical inquiry is whether the named insured is alleged to be at fault for causing the property damage for which the additional insured is being held liable.

The Fifth Circuit Court of Appeals reached this same conclusion in *Gilbane*

*Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589 (5th Cir. 2011).  In *Gibane Bldg. Co.*, a general contractor, Gilbane, sought defense and indemnification from Admiral Insurance Company based on an insurance policy held by its subcontractor Empire Steel Erectors ("Empire").  664 F.3d at 592.  The underlying suit was brought by Michael Parr ("Parr") for personal injuries he sustained while climbing down a ladder at the construction site.  At the time of his accident, Parr was employed by Empire and was acting within the course and scope of his employment.  As a result of his injuries, Parr sued Gilbane, the general contractor operating the construction project and Baker Concrete, the installer and maintainer of the ladder.  *Id.*  Parr did not sue Empire or make any allegations against Empire other than to mention that Parr was an employee of Empire performing work under a contract between Empire and Gilbane.  *Id.* at 599.  As to Gilbane, Parr alleged that recent rainstorms had caused the construction site to accumulate mud and that Gilbane had been negligent in failing to keep the workplace clean.  *Id.* at 592.  Gilbane requested that Admiral defend and indemnify it as an additional insured.

Admiral's policy contained the same Additional Insured Endorsement at issue here.  644 F.3d at 592-3.  Although Parr's Complaint in the underlying action alleged only one cause of his injuries, the negligence of the defendants, Gilbane argued that a potentiality of liability existed because "the injuries occurred when Parr was walking down the ladder with "muddy boots" and, therefore, implicated

Parr's contributory negligence. *Id.* at 598. Thus, Gilbane argued that because Parr or Empire could potentially be found contributorily negligent at a later trial, a potentiality of liability existed sufficient to create a duty to defend. *Id.* The district court agreed with Gilbane and found Admiral owed Gilbane a duty to defend. *Id.* at 599.

On appeal, the Court of Appeals rejected Gilbane's argument and reversed. In determining that Parr's Complaint did not state a potentiality of liability, the court explained:

> Applying the correct standard, the allegations in the pleadings do not implicate either Parr's or Empire Steel's fault. Indeed, even the portion of the petition relied on by the district court alleges that Parr's injuries were caused only by Gilbane: 'Despite the Gilbane Defendants' knowledge of the dangers posed by the mud, these Defendants took no action to correct the problem and as a result, Plaintiff slipped and fell causing his injuries.' Simply put, the petition does not allege any facts suggesting that Parr's own negligence could have caused his injuries.
>
> Nor does the petition allege that Empire caused Parr's injuries. Indeed, the only mention of Empire in the pleadings is, 'Plaintiff was an employee of Empire Steel Erectors, L.P., performing work under a contract between Empire Steel Erectors, L.P. and Gilbane. . . .' In its brief, Gilbane concedes that the requisite language is not in the pleadings, recognizing 'Parr's petition's silence as to any acts or omissions of Empire.' Limiting our review to the facts of the petition, as we must, it does not affirmatively allege any facts implicating the negligence of either Empire or Parr, and Admiral has no duty to defend.

28

644 F.3d at 599.

Therefore, in order for there to be a duty to defend under the subject AIE, there must be some allegation of negligence fault directed by the plaintiff in the underlying suit against the named insured for which the additional insured may be held liable. Without such allegations, there is no potentiality of coverage sufficient to trigger the insurer's obligation to provide a defense.

In this case, Standard Fire could have asserted a potentially covered claim against Marquez directly for negligence or against Capital City for vicarious liability for Marquez's actions, but it did not. As held by the *Reames* court, "[u]nasserted causes of action that could potentially have been supported by the factual allegations or the extrinsic evidence cannot form the basis of a duty to defend because they do not demonstrate 'a reasonable potential that the issue triggering coverage will be generated at trial.'" *Reames v. State Farm*, 11 Md. App. at 561, 683 A.2d at 186. Based upon the allegations of the Complaint in the underlying suit, the district court correctly found that:

> Similar to the underlying claim at issue in *G.E. Tignall & Co., Inc.*, plaintiff's claim in the Superior Court of the District of Columbia is based upon an allegation of negligence directly on the part of the additional insured general contractor and does not include a claim of vicarious liability for any negligence on the part of the primary insured subcontractor. Thus, proof of negligence on the part of Marquez Brick would not provide a defense for Capital City against the claim presented in the Underlying Lawsuit. *See G.E. Tignall & Co., Inc.*,

29

102 F. Supp.2d at 301—2, 306-07.

> Resolution of the claim presented in the Underlying Lawsuit against Capital City would not require a determination of whether Marquez Brick was, or was not, negligent.

(JA, pp. 273-274.)

Therefore, Capital City cannot create a potentiality of coverage by way of extrinsic evidence.  Capital City also may not create a potentiality of coverage by way of the allegations in its third-party complaint.  As explained by the court in *Baltimore Gas and Electric Co.*, an additional insured cannot create a potentiality of coverage by way of a cross-claim against the named insured.  113 Md. App. At 574, 688 A.2d at 513.  In an attempt to bring the Corradetti suit within the scope of coverage of the policy, BGE argued that because Ferguson excavated the pit and was allegedly responsible for filling it in, Commercial Union should have a duty to defend.  The court rejected BGE's argument finding:

> This argument misses the point, however.  Commercial's duty depends upon whether the allegations raised by the Corradettis are within the scope of the policy.  In this case, the Corradettis chose to revise their allegations to sue BGE on a theory that BGE was responsible for the Corradettis' injuries directly, entirely because of its own negligence.  This claim is simply not covered under Commercial's policy.
>
> Moreover, in order to bring the claim within the policy, BGE was not entitled to show that Ferguson shared liability for the Corradettis' injuries.  Although the insured, may, under certain circumstances, proffer

30

> extrinsic evidence, the proposed extrinsic evidence must pertain to an issue that will be generated at trial, or a cause of action asserted in the suit. . . . BGE's contention that Ferguson was also liable was not relevant in the Corradetti suit.

*Id.*

The court further explained that the fact that BGE asserted a cross-claim against Ferguson on the grounds that Ferguson was legally responsible for the plaintiffs' damages did not create a potentiality of coverage because the allegations asserted by the underlying plaintiff against the additional insured determine the potentiality of coverage, not allegations of the additional insured against the named insured:

> Nevertheless, as a result of our decision affirming the Corradetti verdict, we said that BGE is entitled to pursue its cross-claim against Ferguson. BGE could have elected in that cross-claim to pursue a claim that BGE's liability for the Corradettis' injuries was premised on BBE's failure to supervise Ferguson properly or on a derivative liability theory based on Ferguson's own negligence. Even if BGE could successfully prove these allegations, however, they would still not bring the Corradettis' claim against BGE within the ambit of Commercial's policy.

> Commercial's policy covered damages that BGE becomes legally obligated to pay 'because of 'bodily injury' or 'property damage' to which this coverage applies.' Thus, if BGE must pay damages to an injured party because of bodily injury based on claims for which BGE is covered by the policy, then Commercial must indemnify BGE. BGE became legally obligated to pay money to the Corradettis, however, because of bodily

31

injury caused by its own negligence, to which Commercial's policy does not apply. If BGE later proves that Ferguson was acting as BGE's agent and Ferguson was also negligent, <u>the claim against BGE was not based on that theory of liability</u>.

Further, according to the policy's plain language, Commercial had a right and a duty 'to defend' BGE. The policy does not provide coverage for suits *by BGE against others, wholly independent of BGE's defense.* An attempt to show that BGE and Ferguson were joint tortfeasors who *shared* liability would not be a complete defense in the *Corradetti* suit. Thus, it would not create a duty 'to defend' BGE. Nor would such a cross-claim by BGE against Ferguson come within the confines of the policy.

*Id.* at 575-576, 688 A.2d at 513.

Therefore, the determining factor in assessing whether an insurer owes an insured a duty to defend stems from the nature of the claim asserted against the additional insured in the underlying suit, *i.e.*, whether the additional insured is being asked to legally respond in damages for the acts or omissions of the named insured. Capital City's attempt to create a potentiality of coverage by relying on the allegations in its third-party complaint is misguided. Such allegations are irrelevant when considering if the Underlying Suit states a claim that potentially falls with the policy's scope of coverage.

## CONCLUSION

For all of the foregoing reasons, Underwriters respectfully request that this Court sustain the District Court's grant of summary judgment in favor of

Underwriters.  The District Court properly the scope of coverage afforded under the AIE and determined that the Underlying Suit did not create a potentiality of coverage.  Accordingly, Underwriters do not owe a duty to defend Capital City and Capital City is not entitled to its costs, expenses and counsel fees incurred in defending the underlying action.

**BY:**  /s/ Georgia S. Foerstner
GEORGIA S. FOERSTNER
JOHN M. CLARK
Clark & Fox
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
Phone:  856-347-4293
Fax:  856-494-1844
gfoerstner@clarkfoxlaw.com
jclark@clarkfoxlaw.com
*Attorneys for Defendants – Appellees,*
*Certain Underwriters at Lloyd's,*
*London subscribing to Policy Number*
*ARTE018240*

Dated:  September 22, 2014

## <u>ORAL ARGUMENT REQUEST</u>

Appellees respectfully request oral argument.

CLARK & FOX

Dated:  September 22, 2014                    /s/ Georgia S. Foerstner
                                             *Counsel for Defendants - Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ]  this brief contains [8,294] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ]  this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ]  this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ]  this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

CLARK & FOX

Dated:  September 22, 2014

/s/ Georgia S. Foerstner_____
*Counsel for Defendants - Appellees*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 22nd day of September, 2014, I caused this Brief of Appellees to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Robert L. Ferguson, Jr., Esquire
Ann D. Ware, Esquire
FERGUSON, SCHETELICH &BALLEW, PA
1401 Bank of America Center
100 South Charles Street, Suite 1401
Baltimore, Maryland 21201
*Counsel for Plaintiff - Appellant*

I further certify that on this 22nd day of September, 2014, I caused the required copies of the Brief of Appellees to be filed with the Clerk of the Court via UPS.

CLARK & FOX

/s/ Georgia S. Foerstner
*Counsel for Defendants - Appellees*